UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JAMES H. POGUE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:14-CV-599-CHB |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| PRINCIPAL LIFE INSURANCE | ) **ORDER GRANTING MOTION FOR** |
| COMPANY, | ) **SUMMARY JUDGMENT** |
| | ) |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiff's Objection to Magistrate Judge's Opinion and Order [R. 88]; the Defendant's Motion for Summary Judgment [R. 89]; the Defendant's Motion to Exclude [R. 90]; the Plaintiff's Cross-Motion for Summary Judgment [R. 99; R. 101-1]; the Defendant's Motion to Strike the Plaintiff's Cross-Motion as untimely [R. 107]; multiple objections filed by the Defendant to portions of the Plaintiff's summary judgment evidence [R. 110; R. 111; R. 112; R. 113]; the Plaintiff's Motion to Strike or Disregard Defendant's Untimely Replies [R. 129]; and the Plaintiff's Motion for Hearing [R. 137]. For the reasons explained below, the Court will grant the Defendant's Motion to Strike the Plaintiff's Cross-Motion as untimely [R. 107], will grant the Defendant's Motion for Summary Judgment [R. 89], and will deny the remainder of the pending filings as moot.

### I.   BACKGROUND

Much of the relevant factual background to this case is recounted in two previous opinions: the Western District of Kentucky's opinion in *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-00598-CRS, 2018 WL 1189415, at *1 (W.D. Ky. Mar. 7, 2018) ("*Pogue I*"), and the Sixth Circuit's subsequent affirmance (*JAMES H. POGUE, Plaintiff-Appellant, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY*, Defendant-Appellee., No. 18-

5291, 2019 WL 1376032 (6th Cir. Feb. 7, 2019)). Briefly, Plaintiff is a physician who practiced in Nashville, Tennessee before ultimately losing his medical license after an investigation conducted by the Tennessee Board of Medical Examiners. *Pogue I*, 2018 WL 1189415 at *1, *4. He subsequently made claims for benefits under various disability insurance policies, including three issued by Northwestern Mutual Life Insurance Company ("NWML") (the defendant in *Pogue I*) and one issued by Principal Life Insurance Company ("Principal") (the defendant in this matter). In his request for disability benefits to NWML, the Plaintiff claimed "that he suffered from a 'severe anxiety disorder' and that 'on Nov. 9, 2012 [he] had a total nervous breakdown and could no longer think clearly enough to practice medicine.' . . . [And] that he 'chose to surrender [his medical] license due to a feeling of personal incompetence to handle work stresses.'" *Id.* In his request for disability benefits to Principal, the Plaintiff included some similar complaints, including "nervous breakdown" and anxiety. [R. 89-10, Plaintiff's Claim Notice at pp. 2-3, PAGEID#: 886-87] Both insurance companies denied the claims, and the Plaintiff filed two nearly identical suits in Jefferson County Circuit Court, claiming breach of contract, breach of duty of good faith and fair dealing, unfair claims settlement practices, and claims under Kentucky's Consumer Protection Act. *See* [R. 1-2, State Court Record; R. 1-2, State Court Record, *Pogue v. Northwestern Mutual Life Insurance Company*, 3:14-cv-598-CRS-CHL]. Each suit was then removed to this Court on August 29, 2014. *See* [R. 1, Notice of Removal; R. 1, Notice of Removal, *Pogue v. Northwestern Mutual Life Insurance Company*, 3:14-cv-598-CRS-CHL] The first suit was resolved with a grant of summary judgment for the defendant, which the Sixth Circuit affirmed on appeal. As noted, the present suit is now before the Court on a variety of motions, including cross-motions for summary judgment.

## II. STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986). When, as here, the defendant moves for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat that fact as undisputed. Fed. R. Civ. P. 56(e).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

## III. ANALYSIS

### A. Plaintiff's Cross-Motion for Summary Judgment

As a preliminary matter, the Court will address the Plaintiff's Cross-Motion for Summary Judgment, contained within its Response in Opposition to Defendant's Motion for Summary Judgment. *See generally* [R. 99; R. 101-1]. The Defendant has filed a Motion to Strike the Cross-Motion [R. 107], arguing that it is untimely. The parties subsequently briefed the Motion to Strike. [R. 118; R. 123]

Having examined the Cross-Motion for Summary Judgment, the Motion to Strike, and the briefing on the Motion to Strike, the Court agrees that the Cross-Motion for Summary Judgment was untimely. The operative scheduling order [R. 75] set a dispositive motions deadline of **January 31, 2018**. [R. 75, Scheduling Order, at p. 1]. Thus, any dispositive motion – including a Motion for Summary Judgment – filed **after** that date is untimely. The Plaintiff's Cross-Motion for Summary Judgment, contained within its Response to the Defendant's Motion for Summary Judgment, was filed on March 2, 2018. It is therefore late, regardless of the fact that the filing was in response to the Defendant's motion. The Plaintiff makes much of its argument that the Cross-Motion was merely another way of styling its request for relief. *See* [R. 118, Plaintiff's Response in Opposition to Defendant's Motion to Strike at p. 3] But that is not responsive to the Defendant's Motion to Strike: the very relief the Plaintiff requests (entry of summary judgment in his favor, as opposed to merely denying the Defendant's motion and declining to enter summary judgment in its favor) had to be made by January 31, 2018. It was not, so it is late. As to the Plaintiff's argument regarding judicial economy, the Court finds that this interest is best served by timely filings. Accordingly, to the extent that the Plaintiff's Response to the Defendant's Motion for Summary Judgment contains a request that the Court enter judgment in favor of the Plaintiff (rather than merely a request that the Court deny the

Defendant's Motion for Summary Judgment and decline to enter any judgment at all) and arguments in support of such a request rather than merely in response to the Defendant's Motion for Summary Judgment, the Court will grant the Motion to Strike.

### B. Defendant's Motion for Summary Judgment
#### 1. Breach of Contract Claim

The Defendant makes several arguments that the Plaintiff's breach of contract claim must fail as a matter of law. One of these is that the insurance policy at issue clearly and unambiguously excludes coverage in this situation because the Plaintiff's disabling condition was caused by or contributed to by the suspension, revocation or surrender of the Plaintiff's professional license. [R. 89-1, Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Defendant's Memo") at p. 15] The Court agrees. Because this argument is dispositive, the Court will not reach the parties' other arguments regarding the Plaintiff's breach of contract claim.

#### Policy Exclusion

"[A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used." *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859–60 (Ky. 1992) (internal citations omitted). However, "[t]he words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning. The trial court must give effect to what the parties expressly agreed upon instead of plac[ing] a strained interpretation thereon contrary to the intent of the parties. . . . Policies should be interpreted

according to the parties mutual understanding at the time they entered into the contract and [s]uch mutual intention is to be deduced, if possible, from the language of the contract alone." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999) (internal citations and quotation marks omitted) (interpreting insurance policy exclusion); *see also Kentucky Ass'n of Ctys. Workers' Comp. Fund v. Cont'l Cas. Co.*, 157 F. Supp. 3d 678, 682 (E.D. Ky. 2016) ("[d]espite a policy inclination of favoring the insured, however, [t]he rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language of the contract. Insurance policies, like statutes, must receive a sensible construction. Indeed, Kentucky courts have recognized that a liberal interpretation [of an insurance policy] is not synonymous with a strained one. Thus, courts should not rewrite an insurance contract to enlarge the risk to the insurer. Rather, where the language of the policy is not ambiguous, it should not be construed to mean anything other than what it says.") (internal quotation marks and citations omitted) (applying Kentucky law).

Here, the Court finds that the language of the insurance policy at issue is clear and unambiguous. The policy provides as follows:

> This policy does not pay benefits for an Injury or Sickness which in whole or in part is caused by, contributed to by, or which results from:
>
> . . .
>
> 3. The suspension, revocation or surrender of Your professional or occupational license or certification . . .

[R. 89-2 at p. 17, PAGEID#: 1185] In turn, Sickness is defined in relevant part as "an illness or disease which causes a Disability that begins while this policy is in force and which is not excluded under a pre-existing condition limitation." *Id.* at p. 13, PAGEID# 1181.

The Plaintiff argues that the defendant "bears the burden of proving . . . 'the suspension' of [the Plaintiff's] medical license contributed to his Sickness. [R. 101-1 at p. 37, PAGEID# 1770] He argues that "[w]ith respect to Principal's reliance on the term 'contribute', the Merriam-Webster dictionary defines it as 'to play a significant part in bringing about an end or result." . . . As such, Principal would need to prove that [the Plaintiff's] decision to surrender his medical license somehow played a significant part in bringing about or resulting in his Sickness – his anxiety disorder, panic disorder, or depression." [R. 101-1 at p. 31, PAGEID#: 1764 (emphasis removed); *see also id.* at p. 38, PAGEID# 1771 (arguing that the Defendant "must prove the loss of the medical license played a significant part in causing [the Plaintiff's] anxiety disorder, panic disorder, and/or depression")] But this proposition has already been established by a previous opinion of this court. For the reasons explained below, the Court finds that the previous opinion collaterally estops the Plaintiff from arguing otherwise.

**The Court's Previous Opinion**

Applying the same definition of "contribute" as the Plaintiff urges above[1], this Court recently found that "[t]here is ample evidence that [the Plaintiff's] disability" – which the court later described in relevant part as "his debilitating anxiety and depression" – "was caused by or contributed to by the suspension of his medical license." *Pogue I*, 2018 WL 1189415 at *5, *4. In *Pogue I*, the Honorable Charles R. Simpson III discussed the evidence supporting a finding that the suspension of his license and/or the preceding Tennessee Medical Board investigation at least contributed to, among other things, the Plaintiff's "nervous breakdown"; "some PTSD type

---

[1] That definition is "to play a significant part in bringing about an end or result." *Compare* [R. 101-1, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment; and Cross-Motion for Summary Judgment ("Plaintiff's Response") at p. 31, PAGEID#: 1764] *with Pogue I*, 2018 WL 1189415 at *3, n.5 (both quoting https://www.merriam-webster.com/dictionary/contribute).

- 7 -

symptoms"; and "a depressive episode." *Id.* at *4. The opinion further noted that one of the Plaintiff's treating doctors stated that he believed the Plaintiff's condition "to be secondary to the problems he had with the medical board." *Id.* (quotation marks omitted). It further concluded that the Plaintiff failed to rebut the assertion of the defendant in that case, that his disability was excluded under policy terms very similar to the ones at issue in this case. *Id.* Thus, "[b]ased on the evidence, the court conclude[d] that [the Plaintiff's] alleged disability is caused by or contributed to by the suspension of his medical license." *Id.* at *5. On appeal, the Sixth Circuit affirmed the opinion on other grounds, without reaching the issue of the policy.[2] *Pogue v. Nw. Mut. Life Ins. Co.*, 2019 WL 1376032 at *4.

### Federal Issue Preclusion - Standard

Because the previous ruling of the court came in a federal diversity action, federal rules of issue preclusion apply. *See J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) ("we shall apply federal res judicata principles in successive federal diversity actions"). "Under the doctrine of issue preclusion, 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'" *Sumeru Health Care Grp., L.C. v. Hutchins*, 657 F. App'x 381, 385 (6th Cir. 2016) (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1302 (2015). There is a four-part test to determine whether issue preclusion is appropriate:

> 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> 3) the prior proceeding must have resulted in a final judgment on the merits; and
>
> 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

---

[2] The Plaintiff has since filed a Petition for *En Banc* Rehearing which is currently pending.

*Id.* (citing *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003)). "An issue is actually litigated when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *In re Leonard*, 644 F. App'x 612, 616 (6th Cir. 2016) (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)).

### Federal Issue Preclusion - Application

The Court finds that the test for issue preclusion is met here. First, whether the Plaintiff's anxiety and/or depression was caused by or contributed to by the loss of his medical license is one of the precise issues which the parties raised and submitted for determination, and which were actually determined, in *Pogue I*. It is true that the language of the policy exclusion in this case ("[t]his policy does not pay benefits for an Injury or Sickness which in whole or in part is caused by, contributed to by, or which results from . . . The suspension, revocation or surrender of Your professional or occupational license or certification") differs slightly from that in *Pogue I* ("there will be no benefits for a disability or loss that results from or is caused by or contributed to by . . . the suspension, revocation, or surrender of a professional or occupational license or certificate."). *Pogue I*, 2018 WL 1189415 at *3. In particular, the Court recognizes that an "Injury or Sickness" under the policy at issue in this case would likely not be the same for all purposes as the "disability" under the policies at issue in *Pogue I*. However, because the *Pogue I* opinion examined whether the loss of the Plaintiff's medical license caused or contributed to his disability – which that opinion later described as including one or more of the conditions which the Plaintiff described in his Amended Response brief as his Sickness (the *Pogue I* opinion seems to have used the word "disability" to mean the same thing as "factual disability," which in that case meant "debilitating anxiety and depression," and the Plaintiff in this case claims that his Sickness was "anxiety disorder, panic disorder, or depression" [R. 101-1, Plaintiff's Response at

p. 31, PAGEID#: 1764]) – the Court finds that the different language does not mean that the issue is not the same. To the contrary, the causation issue under discussion in this case encompasses the underlying causation issue described in the above-cited portions of *Pogue I*. Accordingly, the varying terminology does not prevent the application of issue preclusion in this case.

Second, the determination of that issue was necessary to the outcome of that case. In 2001, the Sixth Circuit noted a circuit split on, but declined to fully decide, whether under the federal law of issue preclusion "alternative grounds for a judgment are each 'necessary to the outcome' for the purposes of issue preclusion in a subsequent case involving only one of the grounds." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 909-10 (6th Cir. 2001). The Sixth Circuit did find that where "one ground for the decision is clearly primary and the other only secondary, the secondary ground is not 'necessary to the outcome' for the purposes of issue preclusion." *Id.* at 910. The Court has been unable to locate any subsequent binding authority shedding additional light on this circuit split.

Here, the district court's opinion in *Pogue I* did decide the case on two alternative grounds, only the second of which (not discussed herein) was the basis for the Sixth Circuit's affirmance. Even so, the Court finds that the first conclusion (discussed above) was either a co-equal ground or the primary ground; in any event it was not "only secondary." *See Pogue I* at *5 ("[a]lthough the decision above [regarding the application of the policy exclusion due to the loss of the Plaintiff's medical license contributing to his disability] is dispositive in this matter, the court will briefly consider [the defendant's] alternative argument."). Therefore, in the absence of binding authority demonstrating that this ground should not be considered necessary to the outcome of the case, the Court is satisfied that this prong of the test is met. *But see*, *e.g.*, 2 Bus.

& Com. Litig. Fed. Cts. § 16:20 (4th ed.) (citing decisions of other circuits for the proposition that "[i]f a trial court decision rests on alternative grounds in deciding an issue and an appellate court affirms on only one alternative, the preclusive effect is limited to the single ground on which the judgment was affirmed."); 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed.) (citing decisions of various other jurisdictions besides the Sixth Circuit for the proposition that "[t]he federal decisions agree with the [Second] Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.").

Third, *Pogue I* resulted in a final judgment on the merits. "[S]ummary judgment is recognized as a final judgment for the purpose of issue preclusion," *Nat'l Satellite Sports*, 253 F.3d at 910, and "it is well established that a final trial court judgment operates as res judicata while an appeal is pending." *Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992).

Fourth, both this case and *Pogue I* involve the same plaintiff, who had a full and fair opportunity to litigate this issue in the prior proceeding. "[A] full and fair opportunity to litigate entails . . . the procedural requirements of due process." *In re Leonard*, 644 F. App'x at 618 (quotation omitted). The Plaintiff engaged in extensive motion practice and briefing in *Pogue I*, including briefing on the very issue under discussion, and there was nothing to prevent him from raising any and all arguments on this issue. *See Nat'l Satellite Sports*, 253 F.3d at 910 (finding this element met because "[n]othing . . . prevented either [of the parties in the case] from raising all potential arguments"). Because issue preclusion is being applied against the Plaintiff, mutuality of parties is not a requirement, and the different defendants do not mean this factor is not met. *See Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093,

1098–99 (6th Cir. 2012) ("[m]utuality between the parties is not required in defensive collateral estoppel cases so long as the plaintiff has had a full and fair opportunity to litigate the contested issue previously. [The same plaintiff] was the plaintiff in [the earlier case], so the difference in defendants does not render issue preclusion inapplicable.") (internal quotation marks and citations omitted).

Finally, it is appropriate for the Court to bring up this matter *sua sponte*. Normally, issue preclusion is an affirmative defense, which is waived if not asserted and which a trial court cannot bring up *sua sponte* without abusing its discretion. *Neff v. Flagstar Bank, FSB*, 520 F. App'x 323, 327 (6th Cir. 2013) (discussing general rule and applying it where district court gave preclusive effect to the previous decision of a different court and no exceptions to the general rule applied). "Nevertheless, the Supreme Court has indicated that a court may take the initiative to assert the res judicata defense *sua sponte* in 'special circumstances.'" *Hutcherson v. Lauderdale Cty., Tennessee*, 326 F.3d 747, 757 (6th Cir. 2003) (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000), *supplemented*, 531 U.S. 1 (2000)). "Most notably, if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412 (internal quotation marks and citations omitted). The Court finds that this case involves just such "special circumstances." The Court is on notice that the Western District has previously decided the issue presented. Therefore, and consistent with the policy of avoiding unnecessary judicial waste, the Court finds it appropriate to *sua sponte* raise and apply issue preclusion in this case.

In sum, because all four factors of issue preclusion are met and it is appropriate for the Court to raise the matter, the Court must give preclusive effect to *Pogue I*'s conclusion that "[the Plaintiff's] alleged [debilitating anxiety and depression] is caused by or contributed to by the suspension of his medical license." *Pogue I*, 2018 WL 1189415 at *5. The Plaintiff's arguments against applying the Sixth Circuit's decision upholding *Pogue I* to this case do not militate against this application of issue preclusion. First, while the parties discussed "additional reliance on and citation to" that decision in the Defendant's Notice of Citation to Supplemental Authority in Support of its Motion for Summary Judgment [R. 135] and the Plaintiff's Response thereto [R. 136], neither party discussed issue preclusion, so their analyses do not take the relevant factors into consideration. Second, the Court is giving preclusive effect to the previous Western District of Kentucky opinion, rather than to the Sixth Circuit's decision (since, as discussed above, the Sixth Circuit did not find it necessary to review the district court's opinion on the issue the Court finds dispositive here), so arguments directed towards the Sixth Circuit's decision are not completely on-point. Finally, the Court finds nothing in those arguments to convince it that issue preclusion is improper. As noted above, *Pogue I* is "final" for purposes of issue preclusion. The slight variations between the contracts at issue in that case and in this case have been addressed above. The Plaintiff's arguments that the Sixth Circuit's affirmance failed to address all the evidence before it are not properly before this Court, and in any event, "issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1308 (2015) (citation omitted). The Plaintiff's arguments that this Court should consider additional evidence regarding his medical conditions which was either excluded or unavailable in *Pogue I*/the Sixth Circuit's affirmance run counter to the very concept of issue preclusion. For the reasons discussed above, the Court is convinced that the

factual issue of whether the loss of the Plaintiff's medical license caused or contributed to his anxiety and/or depression was "actually litigated and determined by a valid and final judgment, and the determination [wa]s essential to the judgment." *B & B Hardware*, 135 S. Ct. at 1303 (citation omitted). The Plaintiff has already had his chance to litigate this issue, and he lost. Given that, the previous determination should have conclusive effect, and given the plain language of the policy exclusion, all other issues are irrelevant. If the Plaintiff could now make an "end run around" issue preclusion merely by presenting new evidence to try and persuade the Court to reach the opposite outcome on this factual issue, then issue preclusion would be essentially meaningless, as would the concern for "the avoidance of unnecessary judicial waste" articulated by the Supreme Court in *Arizona*. *See Arizona*, 530 U.S. at 412.

Accordingly, just as in *Pogue I*, "[b]ecause his insurance contrac[t] expressly preclude[s] payment in such instances, [the Plaintiff's] breach of contract claim[] fail[s] as a matter of law." *Id.*

### 2. Bifurcated Claims

Finally, the Court will address the issue of the bifurcated claims. The Court's previous order at [**R. 25**] bifurcated the breach of contract claim from the Plaintiff's other claims. Thus, the Court will order the parties to brief the question of whether the bifurcated claims must necessarily fail under Kentucky law, given the failure of the breach of contract claim.

### IV. CONCLUSION

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The Defendant's **Motion to Strike the Plaintiff's Cross-Motion as untimely** [**R. 107**] is **GRANTED**. To the extent that the Plaintiff's Response to the Defendant's

Motion for Summary Judgment [R. 99; R. 101-1] contains a request that the Court enter judgment in favor of the Plaintiff (and supporting arguments) rather than merely arguments in response to the Defendant's Motion for Summary Judgment, the Response will be deemed **STRICKEN** from the record. The Clerk is directed to terminate the Cross-Motion for Summary Judgment, but to leave the document in the public record.

2. The Defendant's **Motion for Summary Judgment** [**R. 89**] is **GRANTED**. The Plaintiff's breach of contract claim is **DISMISSED** with prejudice.

3. The Plaintiff's **Objection to Magistrate Judge's Opinion and Order** [**R. 88**] is **DENIED AS MOOT**.

4. The Defendant's **Motion to Exclude** [**R. 90**] is **DENIED AS MOOT**.

5. The Defendant's Objections to portions of the Plaintiff's summary judgment evidence [**R. 110**; **R. 111**; **R. 112**; and **R. 113**] are **DENIED AS MOOT**.

6. The Plaintiff's **Motion to Strike or Disregard Defendant's Untimely Replies** [**R. 129**] is **DENIED AS MOOT**.

7. The Plaintiff's **Motion for Hearing** [**R. 137**] is **DENIED AS MOOT**.

8. Within **30 days from the date of entry of this Order**, the parties **SHALL** file briefs addressing the question of whether the remaining claims must necessarily fail under Kentucky law, given the failure of the breach of contract claim. The parties are free to make any appropriate motion(s) in this filing. These briefs shall be limited to **ten (10) pages** each. Responses and replies (if any) shall be limited to **seven (7) pages** each.

March 29, 2019

cc: Counsel of record

*Claria Horn Boom*

Claria Boom, District Judge
United States District Court